**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KATHLEEN MAGUIRE,

       Plaintiff,                       CASE NO. 06-CV-10581

-vs-                                    PAUL D. BORMAN
                                       UNITED STATES DISTRICT JUDGE

UNUM LIFE INSURANCE COMPANY
OF AMERICA, a foreign corporation,

       Defendant,
_____/

**OPINION AND ORDER**
**(1) GRANTING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT;**
**AND (2) DENYING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT**

Before the Court are Cross-Motions for Entry of Judgment. The Court held a motion hearing on December 15, 2006. Having considered the entire record, and for the reasons that follow, the Court **GRANTS** Defendant's Motion for Judgment (Docket No. 5) and **DENIES** Plaintiff's Motion for Judgment (Docket No. 8).

**I.**     **BACKGROUND**

This case arises out of an ERISA determination made by UNUM Life Insurance Company of America ("UNUM") that denied Plaintiff Kathleen Maguire's ("Plaintiff") claim for short term disability benefits. ("STD"). Plaintiff brings two Counts in her Complaint pursuant to 29 U.S.C. § 1132(a)(3): (1) To Recover Full ERISA Benefits; and (2) To Remedy Breach of Fiduciary Duty. In relief, Plaintiff requests (1) a declaratory judgment that Plaintiff is entitled to the STD benefits; (2) a preliminary injunction enjoining UNUM from discontinuing or limiting Plaintiff's disability payments; (3) a full and accurate accounting of Plaintiff's benefits; (4) an

order of payment of her full payments plus interest; (5) a disgorgement of any profits gained by UNUM and equitable distribution of any profits to Plaintiff; and (6) reasonable attorney's fees.

### A.	Plaintiff's Factual Allegations

Plaintiff was a participant in an ERISA welfare benefit plan called Life, Disability and Health Benefits Program while an employee of the Bartech Group. Plaintiff claims that she became disabled on June 17, 2005, because of chest pain. (Compl. ¶ 9). Plaintiff then furnished a notice of claim and satisfactory proof of disability to UNUM. (Compl. ¶ 18). Plaintiff met with Dr. D.C. Yuzon, and he performed an ECG, chest x-ray, and blood work. His evaluation revealed that Plaintiff's cardiac condition was within normal limits. (Compl. ¶ 10).

On July 5, 2005, UNUM acknowledged receipt of Plaintiff's claim. (Compl. ¶ 19). On July 11, 2005, UNUM sent out two (2) letters, one to Dr. Corsi requesting Plaintiff's medical records and the second to Plaintiff denying her claim since Defendant determined that Plaintiff's condition was "work-related," thus not covered under the policy. (Compl. ¶ 20). On July 13, 2005, UNUM sent a request of Plaintiff's medical records from Dr. Yuzon. (Compl. ¶ 21). On July 29, 2005, UNUM again denied Plaintiff's claim for STD on the basis that her condition was preexisting. (Compl. ¶ 22). Plaintiff appealed that decision. (Compl. ¶ 23). UNUM affirmed the denial of Plaintiff's claim on October 4, 2005, concluding that Plaintiff's medical condition was directly related to anxiety and was due to her work situation. (Compl. ¶ 24).

Subsequent to Plaintiff's July 29, 2005 denial of benefits, she was also examined by Dr. Deborah Van Ort. (Compl. ¶ 12). Dr. Van Ort ordered an Esophagogastroduodenoscopy ("EGD") on September 28, 2005, that revealed that Plaintiff's chest pains were the result of gastroesophageal reflux disease ("GERD"). (Compl. ¶¶ 13-14). On August 30, 2005, Dr. Van

Ort sent UNUM a letter that stated that she did not believe that Plaintiff's symptoms were related to any prior medical conditions or to her work environment. (Compl. ¶ 15). In letters sent to UNUM on October 8 and 11, 2005, Dr. Van Ort wrote that Plaintiff had been diagnosed with GERD and diffuse gastritis, that there was no cardiac etiology for Plaintiff's reported pain, and that there was no link to these diseases to the work setting. (Compl. ¶¶ 16-17).

In response to UNUM's October 4, 2005 affirmance of its previous denial, Plaintiff submitted the letters from Dr. Van Ort. (Compl. ¶ 25). On October 18, 2005, UNUM again affirmed the denial, stating that its medical staff concluded that there was a direct causal link between her reports of work stress, which provoked alcohol abuse, resulting in her gastro-esophageal condition. (Compl. ¶ 26). Plaintiff claims that she has exhausted all of her appeals and reconsideration processes. (Compl. ¶ 27).

**B.     UNUM's Statement of Facts**

UNUM states that it received Plaintiff's claim for disability benefits on or about June 30, 2005. (Def. Br. 1). As part of her claim, Plaintiff attached an Attending Physician's Statement from Dr. Yuzon that diagnosed her with thrombophilia, migraines, anxiety, and deep vein thrombosis. (Record 39). Dr. Yuzon further stated that Plaintiff had a history of blood clots in her legs, migraines, thyroid cancer, and that Plaintiff had been unable to cope with work stress lately and was getting chest pain at work. (Record 35). He documented that Plaintiff's medical condition would last approximately three (3) months and that Plaintiff could perform some, but not all, of her job functions. (Record 35, 40, 64).

UNUM requested Plaintiff's medical records from Dr. Yuzon. In those records, Dr. Yuzon made the following notes on June 21, 2005: (1) that Plaintiff complained of severe stress

related to work; (2) that Plaintiff got chest pain and felt like she was having a heart attack or stroke; (3) that Plaintiff admitted that she was a binge drinker / alcoholic; and (4) that Plaintiff was requesting time off because she felt that her health was at stake. (Record 72-75). Dr. Yuzon wrote under "Assessment and Plan" that Plaintiff's medical problems were due to "work stressors." (Record 72, 73).

On July 11, 2005, Plaintiff had two conversations about her situation with UNUM employee Tara Pitmann. During the first conversation, Plaintiff explained that she was a very emotional person, never had the opportunity to take lunch at work, had an "unbelievable" stress level, and was concerned that the medical information stating that she was drinking alcohol would prevent her from receiving benefits. (Record 59). Later that same day, Plaintiff again spoke with Pitmann. Plaintiff told Pitmann that she was losing her job, discussed her gynecological problems, and stated that she was out from work because of the depression and not the gynecological problems. (Record 129).

On the same day, July 11, 2005, Pitmann advised Plaintiff in writing that UNUM was denying her claim for STD benefits because the medical information indicated that her disability was "work-related." (Record 118-20).

On July 20, 2005, Dr. Yuzon sent a letter to UNUM stating that Plaintiff was experiencing episodes of chest pain and was currently being evaluated for that condition. He opined that if the test results were normal, she could return to work the following week. (Record 150).

On August 15, 2005, Plaintiff appealed UNUM's decision denying her claim for STD benefits. (Record 282-83). On August 30, 2005, Dr. Van Ort sent a six-line letter to UNUM

stating that Plaintiff's symptoms were not associated with her work environment, since those symptoms manifested themselves outside of the work environment. (Record 306).

As part of UNUM's appeal process, Plaintiff's file was referred to Gary McCollum, R.N., for a medical review. McCollum reviewed Plaintiff's medical files, including information from both Dr. Yuzon and Dr. Van Ort. On August 30, 2005, McCollum created a "Medical Response" form that found that whereas Dr. Yuzon's evaluation was supported by medical records, Dr. Van Ort did not include any information on file. McCollum suggested obtaining more information from Dr. Van Ort on Plaintiff's condition. (Record 299-302).

UNUM received Dr. Van Ort's records that included August 19, 2005 results from a Transthoracic Echocardiogram performed by Dr. Keith V. Atkinson. The report concluded that Plaintiff had some tricuspid regurgitation and mitro regurgitation. (Record 313).

On October 3, 2005, Plaintiff's file was reviewed by Dr. Peter Brown on behalf of UNUM. Dr. Brown considered the information supplied by both Dr. Yuzon and by Dr. Van Ort. Dr. Brown found that although Dr. Van Ort stated that in her opinion Plaintiff's condition was not work-related, he found that Dr. Van Ort's opinions were not supported by any documentation and that she was not aware of Plaintiff's history of alcohol abuse. (Record 330). Dr. Brown also reported that he attempted to contact Dr. Van Ort to clarify her positions with respect to Plaintiff. Dr. Van Ort informed Dr. Brown, through her secretary, that she did not want to be further involved; and Dr. Van Ort instructed her secretary to answer Dr. Brown's questions from Plaintiff's chart. Dr. Brown noted that Dr. Van Ort's primary diagnosis was GERD and that no follow up appointments or treatment had been scheduled at that time. (Record 330).

Plaintiff was advised that UNUM had denied her appeal on October 4, 2005. In that

letter, UNUM detailed and reiterated to Plaintiff the reasons that her claim for STD was denied. First, UNUM noted Dr. Yuzon's records which documented anxiety and binge drinking related to her work situation. Second, UNUM recounted Plaintiff's telephone conversations on July 7 and 11, 2005, where she told UNUM employees that her stress at work was "unbelievable" and that she requested disability based on her depression and not her gynecological issues. Finally, UNUM advised Plaintiff that the medical records in her case did not support the contention that her conditions were not independent of her former work environment. UNUM noted that Plaintiff's cardiac tests were normal and that her chest pain had been attributed to work situation anxiety. (Record 335-39). As a result, UNUM denied her appeal.

On October 8, 2005, Dr. Yuzon sent a short follow-up letter to UNUM's appeals body. In that letter, he informed UNUM that he had evaluated Plaintiff again on October 5, 2005. Dr. Yuzon wrote that Plaintiff's new diagnosis showed gastroesophageal reflux disease and diffuse gastritis. Plaintiff had been referred to a stomach specialist. Finally, Dr. Yuzon informed UNUM that Plaintiff was ready to go back to work and requested that UNUM reevaluate Plaintiff's case in light of this information. (Record 358). Dr. Van Ort sent a short letter to UNUM dated October 11, 2005, stating that she saw Plaintiff in her office on October 7, 2005. Dr. Van Ort reported that Plaintiff was responding well to medication for her reflux disease and gastritis. She also reiterated, without explanation, that Plaintiff's condition was not work-related. (Record 359).

Dr. Brown conducted another review on October 17, 2005, incorporating into his analysis the two October 2005 letters sent to UNUM by Dr. Van Ort. Dr. Brown concluded that both of the letters were consistent with the previous data in the file. Dr. Brown also noted that Dr. Van

Ort failed to explain her difference of opinion with Dr. Yuzon about whether Plaintiff's condition was the result of her work environment. Dr. Brown also stated that Dr. Van Ort was still unaware of Plaintiff's past relevant history, including acute emotional distress, binge drinking, and chest pain exacerbated by thinking about her impending termination from her job. (Record 28).

On October 18, 2005, UNUM informed Plaintiff that the additional information did not change UNUM's assessment denying Plaintiff STD benefits. (Record 362-64). The letter also stated an additional reason, not included in the original denial, for denying benefits – that Plaintiff's diagnosed conditions did not qualify her as "disabled" within the meaning of the policy. UNUM further informed Plaintiff that she had exhausted all of her administrative remedies.

## II.   ANALYSIS

### A.   Standard of Review

The parties agree that the proper standard to apply to UNUM's ERISA determination in this case is whether the determination was "arbitrary and capricious." The Sixth Circuit has recognized that this standard is highly deferential to the decision of the ERISA plan administrator. *Osborne v. Hartford Life and Acc. Ins. Co.*, 465 F.3d 296, 299 (6th Cir. 2006).

> Under this deferential standard, we will uphold a benefit determination if it is rational in light of the plan's provisions. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. Indeed, we must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants.

*Gismondi v. United Techs. Cor*, 408 F.3d 295, 298-99 (6th Cir. 2005) (internal quotations and citations omitted). However, despite applying this deferential standard of review, a court must also consider the conflict of interests involved:

> Notwithstanding this deferential standard, courts must be aware of a possible conflict of interest and consider it as a factor in determining whether the decision to deny benefits was arbitrary and capricious. If a plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.

*Id*. at 298-99 (internal quotations and citations omitted).

### B. Plaintiff's Motion for Summary Judgment

The Sixth Circuit has held that the summary judgment mode of analysis is not proper for the adjudication of an ERISA action. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). The court has further recognized that most lower courts in this circuit have treated summary judgment motions as motions for entry of judgment. *Wages v. Sandler O'Neill & Partners, L.P.*, 37 Fed. Appx. 108, 111 n. 2 (6th Cir. 2002) (unpublished). Therefore, the Court construes Plaintiff's Motion for Summary Judgment as a Motion for Entry of Judgment.

### C. UNUM's Decision Denying Benefits

Plaintiff argues that there was no rational basis for denying her STD benefits when UNUM concluded that (1) her condition was work-related; and (2) her medical condition with not "disabling" under the terms of the plan.

#### 1. Work-Related Medical Condition

Plaintiff argues that she suffered from GERD, which was the cause of her chest pain. Dr. Yuzon initially diagnosed this condition as anxiety related to work, so he recommended that she discontinue working on June 17, 2005. Her chest pain continued through July 2005. A series of

8

tests were run on her cardiac condition with no abnormality. In August 2005, Plaintiff was diagnosed by Dr. Van Ort as suffering from GERD and prescribed medication. Once the GERD was treated, the chest pain went away. Dr. Van Ort opined in several written documents that Plaintiff's condition was not work-related. Furthermore, in response to UNUM's preference for the opinion of Dr. Yuzon over Dr. Van Ort, Plaintiff notes that her chest pain continued even after she was taken away from the work environment. Finally, Plaintiff contends that UNUM did not provide any medical connection between the binge drinking and GERD.

In regards to Plaintiff's claim that UNUM did not give enough weight to the opinions of Dr. Van Ort, the Sixth Circuit has recognized that when a plan administrator decides to rely upon the medical opinion of one doctor over another in determining whether a claimant is entitled to ERISA benefits, the plan decision cannot be said to be arbitrary and capricious because it would be possible to proffer a reasoned explanation, based on the evidence, for the decision. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). At the same time, a plan administrator may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

The Court does not find that UNUM's determination in this instance was "arbitrary and capricious." Here, UNUM found the diagnosis of Dr. Yuzon more credible since it was supported by medical records and follow-up conversations. UNUM argues that it did not appear from the record that Dr. Van Ort was fully aware of Plaintiff's admitted work-related stress problems and associated binge drinking. Furthermore, the record indicates that UNUM did not arbitrarily refuse to credit the opinions of Dr. Van Ort. UNUM attempted to clarify the positions

of Dr. Van Ort, but she did not provide any additional support for her twice-repeated opinion that Plaintiff's condition was not work-related. UNUM cited the opinions of Dr. Yuzon and Plaintiff's own admissions that her health problems were work-related in determining whether Plaintiff was entitled to benefits. Finally, UNUM contends that even though Plaintiff was ultimately diagnosed with GERD after her termination of employment, that diagnosis does not impugn the validity of Dr. Yuzon's conclusions that Plaintiff's June 2005 medical conditions were due to work-related stress and associated binge drinking. The Court finds that this is a rational interpretation of the record, even though Plaintiff's interpretation, based on Dr. Van Ort's opinion, may be equally rational. *Gismondi*, 408 F.3d at 298-99.

2. Claim that Plaintiff was Disabled within the Meaning of the Policy

Plaintiff argues that both of her treating physicians, Dr. Yuzon and Dr. Van Ort, concluded that Plaintiff was disabled within the meaning of the policy. Plaintiff contends that UNUM is now relying on that defense that it did not employ in its initial denial. Plaintiff notes that the only individual that stated that Plaintiff was not disabled was the resident nurse doing the paper review.

UNUM argues that the record does not include any statement from either Dr. Yuzon or Dr. Van Ort that Plaintiff was disabled within the meaning of the policy. UNUM points out that Dr. Yuzon's diagnosis first attributed her disability to her employment and second stated that she could return to work by July 25, 2005, after a series of tests. Additionally, Dr. Yuzon stated that Plaintiff told her that her on June 21, 2005, that her condition was related to stress at work. Dr. Yuzon then gave Plaintiff a work note for time off and recommended that she seek further

treatment and see a counselor. According to UNUM, although Dr. Van Ort ultimately diagnosed Plaintiff with GERD and gastritis, Plaintiff was not disabled from performing her job duties.

Additionally, UNUM argues that its defense that Plaintiff's condition was not disabling is not newly-raised because its October 18, 2005 letter denying her claim had considered the information contained in the two October 2005 letters sent to UNUM by Dr. Van Ort. Upon considering the provided additional medical information, UNUM advised Plaintiff that even if she had GERD, there was nothing in the record to show that GERD was disabling within the meaning of the policy. In the alternative, UNUM states that under ERISA, a plan administrator is not required to identify all defenses available to it under the plan.

Initially, the Court finds that UNUM's defense that Plaintiff's medical condition was not disabling within the meaning of the policy is not newly-raised. The Sixth Circuit has held that a court may not consider evidence outside of the administrative record in an ERISA claim, unless it supports a procedural challenge. *Wilkins,* 150 F.3d at 619. In this instance, UNUM was addressing the opinions of Dr. Van Ort in its October 18, 2005 final denial. (Record  363). Moreover, Plaintiff fails to show any evidence in the record that her diagnosis of GERD was disabling within the meaning of the policy.

### D.     Breach of Fiduciary Duty Claim

UNUM argues that Plaintiff cannot recover for Count II of her Complaint for a breach of fiduciary since ERISA otherwise provides the remedy of enforcing the terms of the plan. Plaintiff does not respond to this argument. The Court agrees with UNUM that where a plaintiff has an adequate remedy under 29 U.S.C. § 1132(a)(1)(B) (recovery of benefits under the plan),

11

an individual plaintiff cannot also maintain a breach of fiduciary duty claim under § 1132(a)(3). *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** UNUM's Motion for Entry of Judgment and **DENIES** Plaintiff's Motion for Entry of Judgment.

**SO ORDERED**.

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: January 22, 2007

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 22, 2007.

s/Denise Goodine  
Case Manager

12